They may remove that if you Alan McNeil was denied his Sixth Amendment right to counsel After being charged with three felonies, he was appointed an attorney But her representation of him was plagued by inaction Most importantly She failed to file a meritorious motion to suppress Which if granted would have resulted in suppression of all of the evidence and dismissal of the charges Because of this I'm sorry counsel just so I understand your argument on that Is it your position that? We can make that judgment now or that there has to be a hearing before the district court on that question Our position is that this court can make the judgment on ineffective assistance now based on the record that we have I mean don't we have to get some information about what the lawyer knew at the time How much information had been conveyed to her and then also whether she had some strategic reason for not bringing the motion? Our position is that There is no conceivable strategic reason under the circumstances of this case. Well suppose the prosecutor Thought that mr. McNeil had committed a murder, but they didn't quite have the strongest case But they were willing to charge him unless he pleaded guilty to this Wouldn't that be a good reason? We just have no indication that anything like that was happening in this case well, that's the problem with giving it with with granting ineffective assistance now because unlike in Gruninger and the primo case we don't have a record So let me explain This is our primary position We do raise an alternative request that if this court were not to Just hold that Mr. McNeil's counsel was ineffective based on this record that we would be requesting then a remand for a hearing on that issue but the reason why this record is different than some other cases where we do need a hearing on ineffectiveness is Because we have the police reports and the warrant affidavit the exact documents that Mr. McNeil's attorney had when she was making the decision of whether or not there was a viable suppression issue in this case. If that's the Case because the police reports don't say that the two people the two children who answered the door said that their father wasn't home That's not in the police reports and it seems like you rely on that very heavily for your fourth amendment argument, so We don't know did the lawyer at the time did did your client tell his lawyer Oh my two kids said I wasn't home like how much information did she have when if all she had was the police report? She doesn't really have much the police reports say that the children were inside by themselves a What if they said aren't my dad's in the backyard? Which is Our position is that that is an implication that Mr. McNeil is not in the house The police reports do not say Anything about Mr. McNeil being present anywhere else on the property or any indication? So based on that record, which is what Mr. McNeil's counsel had before trial It should have been clear to her That there was a meritorious suppression issue based on those replaced for police reports and the warrant affidavits Those documents reveal that the police conducted an illegal search when they entered. Mr. McNeil's backyard without probable cause or a warrant and Without any other justification for being there This was an illegal fishing expedition there is no justification for the officers conduct They did not have a warrant which would be required to search. Mr. McNeil's cartilage and Without a warrant they were limited to acting as any member of the public might act They could approach. Mr. McNeil's front door They could knock and they could try to speak to whomever answered but After learning that he was not home They had to leave Just like a member of the public would do But instead they walked around his house Through his cartilage into his backyard and up to the shed in the back where they ultimately collected All of the evidence against him So our position is that the merits of this motion are clear and should have been obvious to Mr. McNeil's attorney as soon as she received those documents in discovery And Under the circumstances of this particular case where there's no plea offer. There was no plea agreement There could not have been strategic reasons for counsel not to file this motion Mr. McNeil's attorney Had him plead guilty to the entire indictments all of the charges with no plea agreement and No limit on his sentencing exposure He received no meaningful benefit for this plea All he got Was a one-point reduction in the recommended sentencing range for the early plea But this didn't even guarantee a shorter sentence Can I ask you a question about the plea related and effective assistance claims? Sure, are you making an argument now that trial counsel was ineffective for permitting? Mr. McNeil to plead guilty without an agreement No, your honor because it seems like that was an argument in front of the district court But you're no longer raising. No, and I apologize if that was unclear. I just want to make sure I understand. Yes No, just in the context of looking at the Fourth Amendment claim and That on the one hand we have a very strong motion that if granted would have resulted in dismissal And on the other hand, there's no Benefits to Mr. McNeil's plea in this case because he didn't even have a plea agreement. He pled guilty to the entire indictment Um, I mean counsel might have been trying to negotiate a plea We don't have any indication of that And mr McNeil alleges in his petition that he asked her to negotiate to speak with government and she didn't on the on the plea point What exactly are the so the claims you are raising now as I understand it? Not that it was ineffective to allow the defendant to plead guilty with no upside but rather a failure to Negotiate a plea and also maybe a failure to transmit a plea offer so the the claims in our first set of briefing, which is what I have focused my arguments on today thus far our Ineffective assistance for failing to file the motion to suppress. Yeah, I'm sorry, but so are you not raising any other? I'm just yes and to one side the motion to suppress. What else are you sure? So the issues that are raised in our supplemental briefing, which was on the second grant of a COA There are two claims there. One is ineffectiveness for failing to negotiate with the government or Potentially communicate a plea offer if one was made that's that's one claim But it kind of has two parts to it because on the one hand there is mr McNeil asking his attorney to negotiate and he alleges that she did not on the other hand If a plea offer was made one was not communicated. That's one claim Raised in the supplemental briefing and then the second claim in the supplemental briefing was a failure to investigate I'm sorry on the one. I will stop in a minute, but on the one claim related to the plea the claim is Because though I mean the law treats those two things quite differently failure to transmit a plea offer Versus failure to negotiate and so I'm just trying to get my hands around sort of what is the claim? Yes, so mr. McNeil alleged both And again, this is in our supplemental briefing He alleged that his attorney that he asked her to speak with the prosecutor and she did not do so So she did not try to get a plea bargain for him on the one hand on the other hand He also alleges and this is I believe undisputed that no plea offer was communicated to mr. McNeil Under the circumstances of this case It is likely that an offer was made as they often are and it was not communicated So those are the two parts they sound alternative right they can't both be right well I think the common theme here is is inaction mr. McNeil's attorney Just failed to act on his behalf so She didn't affirmatively try to negotiate and she also wasn't communicating with him And so if an offer was made to her even if she didn't initiate the negotiations You know she she didn't communicate that to him turning back to Can I just ask you a question on the ineffective assistance issue you contend that the Gruninger test applies here? But that has been applied Primarily in cases where the case goes to trial not on pleas and the primo rule one could argue Applies to a plea case. How do you distinguish? What why should we not apply the primo rule? We're primo Gruninger Presley these are all the Strickland standard They are just applications of the Strickland standard to different circumstances right the Presley Gruninger Analysis that this court has applied fits this case because that is designed for scenarios where Counsel was ineffective for failing to file a motion to suppress which is the primary allegation here in this courts decisions in Presley in Gruninger there was nothing about that analysis that Depended on the defendant having gone to trial instead of taking a plea It is a specific application of the Strickland standard that fits this scenario so we are asking this court to apply the Strickland standard and specifically to look to Presley For the first three elements which are under deficient performance Whether the motion had some substance and then if so whether there were any strategic reasons for not raising it and under the prejudice prong to ask whether the motion was meritorious and likely would have been granted and then the final piece of the prejudice analysis is the only part that Can't come directly from Presley because that was a trial case and that's the part of the analysis where we ask whether But for the ineffectiveness There is a reasonable probability that the defendant wouldn't have in Presley would not have been convicted Here we're asking this court to apply the guilty plea analysis the Strickland analysis set forth in Hill cases applying Hill Reasonable probability that Mr. McNeil would not have pled guilty to the entire indictment And On that point of prejudice, Mr. McNeil was prejudiced by his counsel's inaction Because as I mentioned if the suppression motion had been litigated successfully the charges would have been dismissed All of the evidence against Mr. McNeil was gathered from that shed in the backyard Which means it was fruit of the officers illegal entry into his cartilage without a warrant Can I ask you a question I'm back over on the plea the plea related charge of ineffective assistance So I think you argue that the district court to the extent the district court was applying a waiver Analysis and it actually looks to me like he was only applying the waiver analysis to the claim. You are not raising here the Ineffective by virtue of allowing Mr. McNeil to plead guilty with no agreement But to the extent the district court is applying a waiver analysis at all You say the district court got it wrong because the district court thought these were strong Sworn statements under oath and in fact, they were not sworn statements. And I guess my question is how much does that matter? Well, our position is there's just no conflict here between any sworn statements that mr McNeil made and any of the ineffective assistance claims that we are raising right, but if if Mr. McNeil just said in court, but not under oath. I am satisfied with my counsel's performance. That would not Why would that not also be something we would look into in terms of whether this claim has been waived? I don't believe this court has ever held that an unsworn statement that conflicts with a Allegation of ineffectiveness would would meet that that same standard I also couldn't find any case where we said it wouldn't and so I guess I'm just asking you Um as I get maybe just as a common-sense matter Why does it matter so much if he was under oath at that precise moment or because the statement under oath carries significantly more weight you know the threat of Perjury, for example, so our position is that that that wouldn't count But also that in this case, you know, there there isn't we don't even have that all we have is mr. McNeil's Silence in response to you know A judge asking a group of people a series of questions with the preface if anyone would like to answer Please raise your hand It's very different from a one-on-one plea colloquy Under oath where a person is being asked specific questions and making specific answers how many people were in that group? I don't know your honor. It's not reflected in the transcript Unless the court has additional questions, I will Reserve my rebuttal time. Thank you miss Cheryl. Thank you. Mr. Kasper I Would like to start with the standard of review for the Ineffective assistance of counsel claim related to the failure to file a motion to suppress With respect to my colleague We do believe there is a material difference between the primo standard which was applied in the context Of a of a guilty plea as opposed to a case that proceeded to trial and in the standard from Gruninger and Presley The primo standard is a for the for the prep for the deficient performance prong is a no competent attorney standard by contrast the Gruninger standard Is a standard that looks at whether the motion would have had some substance which is we believe a materially different standard than no competent attorney and then also Whether there were reasonable strategic reasons For the for the council not to file the motion. Would you keep your voice up a little you're trailing off a bit Thank you. I apologize. The Microphone is falling down So turning first to the to the some substance standard versus the no competent attorney standard I Understand the point you're making but it does seem like I'm not sure Bifurcating the two steps makes that much sense because under Gruninger and Presley You're also gonna have to show this motion would have been granted. So maybe that's really the difference no competent attorney versus Meritorious would have been granted. Yes So I would say one important point is that both the McMahon case which we cite and and Kimmelman which is a later case that primo relies on both say whether or not the Motion would have been granted is not the determinative consideration For whether a council provided ineffective assistance for not filing a motion to suppress All right, because sometimes there are strategic reasons and yeah So there's strategic reasons and that's that's one one one reason and I think and we can talk about this I'm happy to discuss it There are many strategic reasons that one can conceive of from the record before this court Which I which I agree is not complete as to the council's reasoning However, there are also and Justice White points this out in his opinion in McMahon There is uncertainty as to how motions will be ruled on even if there's a correct apprehension of what the law is So in this way, we have to assume that the court would follow the law, don't we? Yes. Yes, your honor but so if you look at And I don't want to confuse Gruninger with Presley, but one of them involved a Miranda issue. Where was whether whether the Defendant invoked his right to counsel under Miranda And he said I need counsel and there was very clear sort of explicit precedent from Mosley Which said that is sufficient to invoke the right to counsel. It's kind of black letter law And I'd compare that to the Scott case from the 11th Circuit, which we cite in our brief which is a it's a Terry stop case and It's a reasonable suspicion issue where there's a totality of a circumstances analysis and in that context You can understand the underlying law that Terry requires the court to engage in but looking at all the facts and how those will ultimately be adjudicated by a court Attorney could have a you know, a reasonable but incorrect analysis of what it ultimately will be here And we would argue that in this context whether you know they had authority to go beyond the front door when they were doing the search is more in that universe of uncertain legal questions that That they could under sheet, you know Counsel could have understood the applicable law but still not determined how a court would ultimately adjudicate it So I just want to make sure I understand this standard of review issue. So Gruninger and Presley come after Primo so you know, we have to follow Gruninger and Presley and so your argument as well, but those were Cases where people went to trial versus pleading guilty and for the life of me I cannot see why that would be a relevant difference when what you're considering is the deficient performance prong The question is did the attorney? provide deficient Fall below reasonable professional standards was the performance deficient When the lawyer didn't file a motion to suppress and that happens before There's either a trial or a plea agreement. So If we were talking about prejudice, I could see why I mean even your colleague Recognize you have to make some tweaks to the standard, but why would the deficiency question which occurs like Before probably you even know whether there's gonna be a plea or a trial Why would that turn on what happens next because there is a a universe? There's greater uncertainty if you if you look at the Primo opinion itself And this is a on page 132 of the opinion it says that there are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and Those like this one where a plea was entered And and the reasons include one if a defendant pleads guilty early as was as was the case here And I would note The defendant just said he was allowed to plead guilty He does not make any allegation about the specific advice appropriated to his counsel It is from our reading consistent with his pleading to say counsel could have advised him not to plead guilty But he may have chosen to plead guilty because he wanted to you know Convey to the community that he was not cooperating with the government He might have wanted to forestall further investigation about issues his counsel would not aware of and that's and those are reasons they're consistent with with Pleaing guilty and You know his counsel providing effective assistance that are still apparent from the record Did you say a little while ago that we can infer from things that are in the record in this case? What counsel strategy was in this case? I don't I think there are things I think that from we can't infer what the council's actual strategy was But I think we can discern Reasons why it would have been Appropriate to advise an attorney what that is where it says that in the record so so for example the defendant was the indictment only alleged one month of Conduct related to drug dealing if you read the his his Statement that was given to the law enforcement officer as recorded in that statement. He had been dealing drugs for a in You know unclear period of time and further investigation by the government Well, you know say they have a Suppression motion hearing and his children are asked to testify and they're asked, you know, how long has your dad been? You know dealing drugs from his from this backyard building that could have opened him up to greater liability There could have been other factual reasons You know appearing before this judge They might not have wanted the full universe of facts related to his misconduct To be in front of the judge that was ultimately going to handle his sentencing and it would be instead a limited universe of facts In the PSR. There's something that is there anything in the record from which we can infer either of those theories? Well as I said One we have his own Mirandai statement or his Mirandai statement as to nature of his conduct Um, so you could what about the second thing that he's afraid of getting his kids to testify We don't know there are I will say there are cases and I think Scott is one of these cases where courts have recognized That that is a reason to choose to plead guilty early judge once said to me you can find anything in an f-sup opinion You look for and that is also why I would I would say that you know We believe that there was a sufficient basis for the court to dismiss this petition You know without having any evidentiary development and I would also note that he did not ask for evidentiary development related to the suppression issue But also while we think that at a minimum this court If it is inclined to reverse the dismissal, it should be remanded to the district court for factional development That's I think sort of whatever standard we're operating under Like the main question right is would this have been a meritorious motion and just exactly how meritorious it has to be Put that to one side for a minute So is it your position that on the record as it now stands and accepting the truth? Mr. McNeil's sworn allegation that his children said he wasn't home and then the police just went into the backyard Anyway to poke around and see if they could find him. Um, that's a frivolous Fourth Amendment claim That's what the district court thought So first of all, I just do want to say and I understand your question We do not agree that the issue before this court rises and falls with whether it was a meritorious motion But and I can talk about that further I do want to answer the question you ultimately probably all agree that if it's a frivolous motion that if the district court was right Then there's no ineffective assistance claim. So why don't we approach it that way? Okay And so I would also say that we don't believe that it has to be frivolous for just asking for the government's position Does the government agree with the district court that this would have been a frivolous motion to suppress? The government does not believe it would have been frivolous. No However, the government also believes that there could be reasonable strategic reasons Why was not filed when the government also believes that a competent attorney could have believed that a motion would have failed I feel like a competent attorney would have said there's clear Precedent in the Fourth Circuit under Covey and cases like that that the police can bypass the front door altogether If there's some reason to believe Skip the front door because the guy is over in the driveway That's one of our cases or there's a big sign that says we're around back. That's another case But short of that it does not say you can try the front door first And then if you're told that the person isn't home feel free if you've still got questions to enter the curtilage Invade this person's privacy and see maybe if you can find him in the backyard. I can't find any support for that So so I think we agree with you that the standard is there has to be reason to believe That you are going to find the primary occupant. I feel like there's two levels of questions here Because I can't find anything that says you can try the door first And if you're not lucky at the door, then we'll talk about reason to believe I don't feel like you get two bites of the apple under our precedent Our president says you can skip the front door not you can go to the front door get told someone's not home And then we'll talk about reason to believe So I'm trying to look at my Notes about our four circuit cases versus other circuits cases because I do recall cases from other circuits where yes other circuits I agree, but I think we would do the analysis of the merits of the Hypothetical suppression motion under I think under Fourth Circuit law. I would I would I would agree Though I also don't know that the Fourth Circuit has said that It is there's a it's a foreclosed that somebody could answer the door because you could envision a situation where somebody answers the door and says This person's not in the house But there's also a very other other clear evidence that that person is somewhere else on the property And why did you go to the front door? Um That could you know that would I mean it's it's it I think it's a it's a It's a good step for law enforcement to first approach the front door I feel like under like the whole point of this I'll let this go in a minute But the whole point of Jardine's or your deans I don't know how to pronounce it is that we treat the police officer like any ordinary social visitor And I sort of feel like if a social visitor comes to my house and my kids answer the door and say she's not home I would be really surprised if that person then went around into the backyard to look for me Well um I Think that in this context there was reason for the officers to believe that the an adult was at the home And it may be you know and we point this out is that you know it didn't have to just be The defendant it could have been the defendant's wife was home, and so they could say well the defendant is not home But they could still believe that an adult is there we have facts in the record Which would have led a reasonable officer to believe that an adult was home? So I would say first There was Within 30 minutes of knocking on the front door there were there was a there's a stop of a traffic stop that occurred That and the officer said was indicative that provided information that was a drug transaction occurring at the house They had seen somebody Coming from going to the house at that time and then leaving and then they had They didn't even see what happened at the front door right for all we know the two kids answered the door and said yeah He's not home Yeah, but they We also know that in his PSR petitioner did not dispute He accepted all aspects the PSR that a that the marijuana had just been purchased at the home And if that marijuana was purchased at the home presumably it was from an adult Even he didn't object to it he did not object to it now But he was given an opportunity expressly to object to the PSR and did not object to it and also There was in the police report for mr. Robinson on page 119 of the JA The officer who went knocked on the door had been advised that the traffic stop had been conducted and then marijuana had been purchased at The residence so so they believed that which would give them reason to believe that there was an adult there Additionally there were juveniles found in the home. We don't know how old the ones were the answer the door We know of three kids from the PSR one is in ages 14 to 15 mr. Jasper all those things you're talking about it Doesn't extend the police officers Right to do a knock and inquire you're just saying well Well, there are other reasons that no it still is the same thing you don't have a warrant You can have all kinds of suspicion, but if that's all you're going on Then you have to say Hello, you're here. I like to talk to you And they will they stay in the house and say or say to the door. I'm here, but I do not want to speak to you What do you have what do you think the police officer have to do that? Either all all the suspicions you talked about what is the police officer have to do that? I think that when it when it when it's when it is children who answered the door is a Reasonable for them to try to find the adult occupant of the wire Why do we have to find it about it, that's their home, and they said not here in the store It's not an interrogation It's a knock and inquire You know like I want to speak to somebody they said they're not here. They have to leave don't they I? Think don't they have to leave by jurisprudence. I don't think our jurisprudence has dealt with this particular factual scenario where How long they get to stay for two hours five twelve How many hours and I would say that's this is a thing that separates this from other cases and in one of the cases From art from our circuit on in addition to sort of going to it to a building in the back They did searches in between where they look between fences it was at night Etc here, and there's no evidence in the record that they did anything But go to another building in the property and knock on the door with that building and that building also had exterior What appears to be exterior things which indicated this was a living space or space used by people which is there's an air-conditioning unit There's surveillance cameras. I thought the police report said they called it a shed but there's also in the The defendant said during his Miranda's interview that there was electricity to it the PSR which again the defendant accepted described it as a Say they saw any of that. They don't the police reports do not say we thought that was an apartment They say they thought it was a shed Yes but I think the important point on this is that if there had been a Suppression hearing all of this additional evidence that might have come into play after the fact which we which the police report don't necessarily They don't necessarily recite everything, but they could have testified at that hearing That evidence could have could have come forward in a suppression hearing Do you did you a brief say do you think there's a dispute of fact about what the children said at the front door? I Think we don't We all we know from the from the police officers reports is that No one was there right there. No one was there. We don't know What what they what they actually said? Yeah, that's what that's how we read the Can you tell me how this rule 11 colic we work down there? To line them all up and ask them as a group a bunch of questions Yes, so the way the colic we worked in this case, and it's not always exactly the same way But the way it worked in this case, and it does happen in other cases as well is they have several defendants That are brought in and there's a certain universe of questions that are asked to the defendants as a group And then the defendants are sworn and it individually asked in this case I think there's two important things that he was asked one Did you understand all of my prior questions and two did you answer my prior questions truthfully? and And so That and then they also go through a number of inquiries specific to the guilty plea, you know Do you do you understand the nature of the charges against you? Do you understand you have right not to plead guilty? understanding the sentencing Consequences of what you're doing. So there is a sort of a two-part process one is a group process and then one is an individualized process Well On the colloquy and the waiver by colloquy, um, as I understand your brief, and I want you to correct me if I'm wrong the the your argument for why there should not be an evidentiary hearing on the claim that the That counsel sort of refused to negotiate a plea agreement is that that was waived Not exactly under oath, but it's like kind of the transit of property when he says under oath I understood your questions and I answered properly that was a waiver Yes, okay. Can I just two follow-up questions? One is why then in your view? Didn't it waive the Fourth Amendment suppression moment? Suppression motion and effective assistance claim. I don't understand So so we did argue that as well. You argue that the Fourth Amendment suppress Also, so we had in a portion of our brief related to the Fourth Amendment I think the last paragraph of our section is it cites to LeMaster Okay, and then my other question is as I read the district courts opinion the district court thinks that what was waived was an allegation that The lawyer was ineffective in allowing mr. McNeil to plead guilty without a plea agreement That's what the district court says was waived and putting to one side this whole sworn versus unsworn thing Like I can see why that makes sense. Like, you know that at the time you're standing up there You're taking a plea without an agreement. So if at that moment, you don't think your counsel did anything wrong I get that but that's not what the district court says about the failure to negotiate a plea And that seems to me it would be sort of different because you might get information about that after the colloquy May my time is expired. May I answer your question? Yes, you may and I think one really important point in in the actual 2255 itself and and his Supporting memorandum is that He he doesn't actually allege anything relate to any of his issues that he has learned since he pled guilty that isn't new And that's a I mean, that's an important distinction. I think with Paylor and and with with other cases is that all the information that he is alleged From what we can tell on the on the record before us is something that he would have known before he pled guilty And we do believe that the record before us is very sparse But I guess I'm thinking since we really can't tell and since the district court didn't rely on that so you want us to affirm that No hearing on failure to negotiate a plea for a reason different than the district court gave us and just rely on waiver for that Yeah, I think you know We think there's no reason even for remand for evidentiary hearing for that because his you know The sort of factual allegations underlying that that there was a complete breakdown in attorney-client communications prior to pleading guilty Are just contrary to his statements under at his rule 11 hearing Which He was asked a number of different questions, which would speak to that issue and in none of those answers Did he give me any indication? He was unhappy with his counsel? Well, but he's the question was Did you hear me and understand me when I described all the rights you have? Yes Did you hear and understand all the other questions? I asked the defendants as a group. Yes Well, and on Jay says Your honor on JA-53 later on in the in the colloquy He was asked whether he answered all of his question. He answered all of my questions truthfully here today, and he said yes as well well, yeah, but He didn't ever say under oath that The things that he said when they were looking at them as a group when he was talking to them as a group So he did he was asked a question as a group and he did not raise his hand when asked that question About the satisfaction of his counsel this whole thing relies on a failure to raise a hand in response to a group question When someone wasn't under oath that that's the waiver I think that and then his other statements where you know He was asked during his individualized colloquy about his understanding of the sentencing process. He was so there was Other opportunities the words I am satisfied with my lawyers performance There is no he is not out of his mouth saying I'm satisfied my lawyers of turn out of anyone's mouth What we would say that when? The judge asked that question doesn't raise his hand He's asked whether he understood the prior questions And then he says he was and he answered truthfully to prior questions that that would be his adoption of that statement Thank you all. Thank you, mr. Casper Michelle he has time reserved Two points your honors on the merits of the suppression issue the law is absolutely clear From the Supreme Court and from this court that the police were Limited to sticking within areas where a member of the public would go And in this case there was No reason to think that mr. McNeil or any other adult was home They did not see what happened at the front door Before they got there, and I just want to clarify that the police report Does not say that the marijuana that was found on the vehicle passenger was purchased at mr. McNeil's house It also does not say When or where it was purchased at all? And The second point just to touch Very briefly back sort of on the initial questions from your honors About the need for a hearing on ineffectiveness in this case Again, our position is that this record is clear enough to show in effectiveness under the circling standard And there are several recent cases where this court has Made that finding itself based on the record even when there was no hearing at the district court This was the case in McKinney and 2013 Carthorne in 2017 Gruninger 2016 Mooney in 2007 those cases are cited in the briefs But alternatively of course we would be requesting a remand for a hearing on the issue of ineffectiveness Don't you have do you have a time situation in this case to reason to expedite If for example that was the remedy Mr.. McNeil has served quite a lot of his nine and a half year sentence and our position is that But for his attorneys and effectiveness he wouldn't have served any of that time so time is of the essence all right Unless the court has any additional questions. We don't thank you so much. Thank you We'll come down Greek Council and proceed to our next game
judges: Roger L. Gregory, Pamela A. Harris, John A. Gibney Jr.